[Civ. No. 16324. Fourth Dist., Div. One. May 19, 1977.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and JUAN PABLO ARROYO, Respondents.

**Counsel**

James J. Vonk, George S. Bjornsen, Arthur Hershenson and Robert A. La Porta for Petitioner.

Philip Miyamoto, Thomas J. Mc Birnie, Scott & Myles and Howard J. Scott for Respondents.

Banks & Leviton and Barry J. Williams as Amicus Curiae.

## OPINION

**BROWN (Gerald), P. J.**—State Compensation Insurance Fund (Fund) seeks modification of a disability award to disallow reimbursement of self-procured medical treatment and certain medical-legal costs.

The applicant, Juan Pablo Arroyo, was a resident of Tijuana, Mexico, and was employed as a laborer at Fallbrook, California. He fell from a ladder while picking fruit and injured his right side and back on January 18, 1975. Medical treatment was provided by Fund through February 23, 1975. Arroyo, on his own, then started seeing Dr. Velasquez de Leon, a Mexican doctor in Tijuana for further treatment. In connection with this self-procured medical treatment, medical reports were prepared by Dr. de Leon and another Mexican physician, Dr. Hidalgo. The award ordered reimbursement for the treatment provided by Dr. de Leon, approximately $1100, as well as reimbursement for medical-legal costs, including the reports submitted by the Mexican doctors to prove Arroyo's claim. The Workers' Compensation Appeals Board (Board) denied a petition for reconsideration.

The issue presented is whether reimbursement for the services of the Mexican physicians should be allowed under Labor Code section 4600, since they are not physicians "licensed by California state law" (Lab. Code, § 3209.3).[1]

Section 4600 of the Labor Code sets forth the basic rules regarding the provision of medical treatment to an injured worker; it states in part:

---

[1]Although Fund claims the California physicians who examined Arroyo reached a different medical conclusion than Dr. de Leon, amicus curiae, the California Applicants' Attorneys Association, is correct in noting: "The issue . . . is not whether the self-procured medical treatment was reasonably incurred; whether the bills were excessive; whether Dr. Velasquez de Leon was a physician or medical doctor competent to treat industrial injuries; or whether there is substantial evidence to support the award for self-procured medical treatment under [pertinent] principles. . . ."

"*Medical,* surgical, and hospital *treatment,* including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, *which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment.*

"In accordance with the rules of practice and procedure of the appeals board, *the employee,* or the dependents of a deceased employee, *shall be reimbursed for expenses reasonably, actually, and necessarily incurred for* X-rays, laboratory fees, *medical reports,* and medical testimony *to prove a contested claim.* The reasonableness of and necessity for incurring such expenses to prove a contested claim shall be determined with respect to the time when such expenses were actually incurred. Expenses of medical testimony shall be presumed reasonable if in conformity with the fee schedule charges provided for impartial medical experts appointed by the administrative director."[2] (Italics added.)

Section 3209.5 defines medical treatment nonexclusively: "Medical, surgical, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, includes but is not limited to services and supplies by physical therapists and osteopathic and chiropractic practitioners as licensed by California state law and within the scope of their practice as defined by law."

Physician is defined in section 3209.3: "Physician includes physicians and surgeons, optometrists, dentists, podiatrists, and osteopathic and chiropractic practitioners licensed by California state law and within the scope of their practice as defined by California state law."

Fund argues simply: "Dr. De Leon is not a physician 'licensed by California state law.' Therefore, the services of Dr. De Leon are not part of the obligation required by a California insurance carrier or employer under Labor Code section 4600." Fund assumes, not unreasonably, the definition of "physician" in section 3209.3 operates to restrict the type of

---

[2]In 1975 the first paragraph of section 4600 was amended to read as follows: "Medical, surgical, *chiropractic,* and hospital treatment . . . in providing treatment. *After 30 days from the date the injury is reported, the employee may be treated by a physician of his own choice or at a facility of his own choice within a reasonable geographic area.*" (Italics indicates added language.) The parties do not argue this free choice provision, effective January 1, 1976, has any bearing on this case.

"medical treatment" an employer is obliged to provide, even though the word "physician" appears neither in section 3209.5, where "medical treatment" is partially defined, nor in section 4600, where the duty to provide "medical treatment" originates (see *Miles* v. *Workers' Comp. Appeals Bd.;* 67 Cal.App.3d 243, 247-248 [136 Cal.Rptr. 508]).

Arroyo responds: "The obligation of the employer to furnish medical treatment to cure and relieve from the effects of an industrial accident is not restricted to medical care rendered within the territorial limits of the State of California." First, he points to Labor Code section 5305, which requires that compensation be paid to covered workers who suffer injury "without the territorial limits of this State."[3] Second, he notes the report of an examining physician licensed to practice in another country has been held to be competent evidence in compensation proceedings, providing other parties are afforded adequate opportunity to cross-examine the physician (*Union Lbr. Co.* v. *Industrial Acc. Com.,* 124 Cal.App. 584 [12 P.2d 1047]). Third, he argues the definition of physician in section 3209.3 is nonexclusive; i.e., "The section does not purport to state that it is the only definition of a physician, but merely that the word physician 'includes' physicians who are licensed to practice in the State of California. . . ." Finally, he urges "[t]he interpretation of [section 3209.3] contended for by petitioner would not be liberal construction of the words as required by Labor Code section 3202 'with [the] purpose of extending their benefits for the protection of persons injured in the course of their employment.' "

The California Applicants' Attorneys Association (Association), as amicus curiae, has filed a brief which supports Arroyo's third contention by urging the definition of physician in section 3209.3 does not exclude out-of-state or out-of-country physicians or medical doctors. Additionally, Association argues the construction of sections 3209.3 and 3209.5 advanced by Fund raises a serious constitutional question in that it seriously restricts the right to travel, a fundamental right guaranteed by the due process clause of the federal Constitution.

---

[3]Section 5305 provides in full: "The Division of Industrial Accidents, including the administrative director and the appeals board has jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this state. Any such employee or his dependents shall be entitled to the compensation or death benefits provided by this division." See *Quong Ham Wah Co.* v. *Industrial Acc. Com.,* 184 Cal. 26 [192 P. 1021, 12 A.L.R. 1190], writ of error dismissed, 255 U.S. 445 [65 L.Ed. 723, 41 S.Ct. 373, 12 A.L.R. 1190] (nullifying the condition of residency).

This case appears to be one of first impression, not because injured workers have never been treated or examined for disability by physicians outside of California, but because of the Promethean argument advanced by Fund.

As Association notes, there are several situations in which workers obtain treatment outside of the state or country:

"The first is the situation where the worker . . . coming within the jurisdiction of the Appeals Board is injured outside of the state or country and either resides there or will be there for a lengthy period. Some employers in this state maintain out of state operations as a part of their California business. A contractor may hire a worker in California for work overseas, for example, in Singapore. Usually the worker is treated in the area where he is injured and even when brought back to the United States from overseas, may be put in a medical center outside of the state for treatment. (See Lab. Code, § 5305; *Alaska Packers Assn.* v. *Indus. Acc. Com.,* 1 Cal.2d 250 [34 P.2d 716], affd., 294 U.S. 532 [79 L.Ed. 656, 55 S.Ct. 518].)

"A second situation exists where a worker lives in a part of California which is far from medical facilities and physicians in California but which is close to facilities and physicians in another state. Examples would be the extreme northern part of the state where Oregon facilities and physicians, often specialists, are readily available or in the Lake Tahoe—eastern part of the state where Reno, Nevada, has outstanding physicians, specialists, and medical facilities. . . .

"A third situation exists where a worker is injured in California and then for one reason or another moves to another state to live. Such a move may be dictated by economic reasons, more favorable employment opportunity in the face of a serious injury, a desire to be closer to family and friends, where there is an inability to work, or for any number of reasons. (See *Vanderwerth* v. *Whiting & Mead,* 16 I.A.C. 32.)

"A fourth situation exists where the worker in California returns to his native state or country for treatment from a competent treating physician. This decision may be dictated because of language considerations or simply a matter of faith in a physician who is of the same background as the injured worker himself. A good example would be a Mexican worker who returns to Mexico and comes under the care of a

competent treating physician. (Cf. *Aliano* v. *Glickstein,* 31 Cal. Comp. Cases 440.)

"A fifth situation exists where the worker leaves California temporarily for one reason or another and requires emergency treatment outside of the state."

The Board confirms that "in countless other cases . . . out of state treatment [has been] either voluntarily furnished by the compensation carrier or awarded by the Board without appellate challenge."

From these observations it is plain the result urged by Fund must be considered with the greatest circumspection. A holding by this court that employers are not obliged, by virtue of section 3209.3, to furnish treatment by physicians not licensed to practice in California would have unsettling repercussions in workers' compensation law.

Central to the issue is an ambiguity created by the use of the word "includes" in section 3209.3. "While the word 'includes' may be used to broaden a specific term, it may also be used as a word of limitation." (11 Ops.Cal.Atty.Gen. 11, 12.) If it is used expansively in section 3209.3, i.e., "includes but is not limited to" (see, e.g., Lab. Code, § 3209.5), then, as respondents and Association contend, the concept of "physician" fairly includes physicians licensed to practice in other states or countries as well as physicians licensed to practice in California. On the other hand, if "includes" is used as a word of limitation in section 3209.3, i.e., "includes only" (see 11 Ops.Cal.Atty.Gen. 11), then, as Fund contends, the Mexican physicians do not fall within the classification.

The parties refer us to no express indications of the intention of the Legislature in enacting section 3209.3. Board decisions before its enactment in 1945 had established that medical treatment did not include attention by a Christian Science practitioner (*Ash* v. *Barker,* 2 I.A.C. 40), a Chinese herb doctor (*Knock* v. *Hartford Acc. & Indem. Co.,* 4 I.A.C. 181), or a practitioner who healed by prayer and the laying on of hands (*Miller* v. *Boos Brothers Cafeteria,* 4 I.A.C. 388). Decisional law also disallowed recovery for chiropractic treatment (*O'Neill* v. *Industrial Acc. Com.,* 17 I.A.C. 111). It appears section 3209.3 was designed merely

to codify the rule developed by these cases that compensation is not allowed for treatment by nonphysicians. It is doubtful the Legislature ever considered the application of the section to treatment by out-of-state physicians.

Labor Code section 5703 provides in part:

"The appeals board may receive as evidence either at or subsequent to a hearing, and use as proof of any fact in dispute, the following matters, in addition to sworn testimony presented in open hearing:

"(a) Reports of attending or examining physicians."

For decades this language has been held to include reports of examining physicians licensed to practice in other jurisdictions (*Union Lbr. Co.* v. *Industrial Acc. Com., supra,* 124 Cal.App. 584). Fund "does not go so far as to contend that the reports of physicians from foreign countries are inadmissible under appropriate circumstances," but contends it should not have to pay for such reports or treatment by such physicians.

Reason does not appear to support this distinction. If the reports of foreign physicians are competent evidence to prove an industrial injury, it is because they are sufficiently reliable and trustworthy. If expenses for such reports are "reasonably, actually, and necessarily incurred" by the employee to prove a contested claim, he is entitled to reimbursement (Lab. Code, § 4600). Here, the Board impliedly found Arroyo acted reasonably in securing treatment and medical reports from Dr. de Leon and Dr. Hidalgo. Fund's exhortations to the contrary are mistimed.

As we have observed above, "the appeals board has jurisdiction over all controversies arising out of injuries suffered *without* the territorial limits of this state in those cases where . . . the contract of hire was made in this state." (Lab. Code, § 5305; see fn. 4.) Although the injury before us occurred in California, we would be remiss not to consider the effect on extraterritorial injury cases of the theory advanced by Fund. Specifically, if an employer is not obliged to provide treatment by a

foreign physician, must an employee injured out of state either return to California for treatment or bear the cost of treatment himself?[4]

Fund replies: "It must be made clear that an employer or insurance carrier can voluntarily accept liability for the payment of medical care and examination by foreign physicians. Under appropriate circumstances, such as where a physician in a foreign country has developed a uniquely new and reliable medical technique (see *Aliano* v. *Glickstein, supra,* 31 Cal. Comp. Cases 440), or where there are no reasonably competent physicians available to an applicant in California and thereafter the United States, or where the applicant has indeed moved to a foreign country, or where a California resident is injured and requires emergency care while working in a foreign country, these are all cases where *common decency and respect for human life would require the employer or carrier to provide for such treatment* in that foreign country. It would do so by agreement. It would not need to be compelled." (Italics added.) While beneficience might compel employers to provide treatment, injured workers would probably prefer to rely on the Labor Code.

In support of its position, Fund quotes a respected treatise on workers compensation law: "Treatment by persons who are not physicians, surgeons, or other practitioners named by statute, nor acting upon their direction, is not 'medical' treatment nor is its furnishing required of the employer. Thus, attention by herb doctors, Christian Science practitioners, or healers by prayer and laying on of hands is not 'medical' treatment when such persons are not also licensed in the professions set out in the law. *This is equally true of treatment by interns and out-of-state physicians unlicensed to practice in California.*" (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.) § 16.01 [2] [c], italics added.) However, no case authority is cited by the treatise author or Fund in support of the italicized sentence.

Fund also relies on *Betancourt* v. *Workmen's Comp. App. Bd.,* 16 Cal.App.3d 408 [94 Cal.Rptr. 9]. In that case an injured worker was

[1]Suppose, parenthetically, a worker hired in · California is injured working on a pipeline in Alaska. Fund urges it should not be responsible for treatment furnished by physicians licensed to practice in Alaska. Suppose further the injured worker obtains treatment from a California physician in Alaska. Even then Fund might attempt to disclaim responsibility. Section 3209.3 states: "Physician includes physicians . . . licensed by California state law *and within the scope of their practice as defined by California state law.*" (Italics added.) The Attorney General has concluded, "a physician, licensed in California, is not acting within the scope of his practice as authorized by California law when treating patients in another state." (11 Ops.Cal.Atty.Gen. 11, 12 (1948).)

entitled by an award to further medical treatment, impliedly chiropractic medical treatment, and the central issue was whether mandate was an appropriate remedy to enforce that right. There was no question that treatment by a chiropractic practitioner was within the ambit of Labor Code sections 3209.3 and 3209.5 as applied to the facts of thaㅑ case (*id.,* at p. 412). In no sense was the court compelled to construe section 3209.3, and the case is unhelpful in resolving the issue before us.

■ "While . . . an administrative construction of a statute, does not acquire legal sanction merely by reason of long usage, it will be accorded great respect by the courts, and will be upheld, if not clearly erroneous." (*Los Angeles* v. *Superior Court,* 17 Cal.2d 707, 712 [112 P.2d 10].) This case cries out for application of this principle, since the Board, employers, and carriers have clearly assumed medical treatment by out-of-state physicians, when reasonably procured by the employee under section 4600, must be paid for by the employer or its carrier, notwithstanding section 3209.3. ■ The interpretation of the latter section proposed by Fund is unreasonable in light of the clear jurisdiction of the Board over extraterritorial injuries where the contract of hire was made in California (Lab. Code, § 5305).

We therefore hold the definition of physician in Labor Code section 3209.3 does not exclude a physician licensed to practice in another country, and where medical treatment and reports are procured from such a physician in accordance with Labor Code section 4600, the employer is responsible for the reasonable expense of such treatment and medical-legal costs. In this case, the physicians provided by Arroyo's employer were unable to help him. On his own he sought and obtained helpful medical treatment where he resided in Tijuana. Fund did not establish in proceedings before the Board that the treatment was unreasonably expensive or that the medical reports were not "reasonably, actually, and necessarily incurred . . . to prove a contested claim." (Lab. Code, § 4600.)

The decision of the Board is affirmed.

Cologne, J., and Staniforth, J., concurred.